### ROBERTS v. CARTER.

Circuit Court, Lake County.

June 20 and 27, 1955.

J. W. & W. B. Hunter, Tavares, for plaintiff.

Leonard Carter, Lakeland, for defendant.

T. G. FUTCH, Circuit Judge.

*Findings of law:* This cause is before the court on the amended complaint, the answer thereto, the defendant's counterclaim and plaintiff's answer thereto, and upon the testimony taken before the special master appointed by the court, his findings of fact and report.

The evidence shows a long course of dealing between the plaintiff and the defendant and her deceased husband which continued smoothly and without interruption from the year 1947 when plaintiff began planting the citrus groves in question for the defendant until the death of her husband in the summer of 1950, and which then continued smoothly and without interruption between plaintiff and defendant until late in 1953—a total period of more than six years.

In 1953 the defendant's son, Leonard Carter, Jr. (her counsel) graduated from college and promptly began to take an active interest in his widowed mother's affairs. He came up with the theory that plaintiff had imposed on his parents by overcharging for various supplies and by doing more work than was necessary, and that in general his services were inefficient. The defendant, however, continued to employ the plaintiff as her grove caretaker, but purchased fertilizer from another source in an effort to pay less and also to buy the fertilizer analysis which she believed advisable.

Plaintiff's services were finally terminated at the close of the year 1953—at which time it appears he retired from the grove caretaking business in general. He claims a lien for his unpaid accounts, early in 1954 filed suit to foreclose his lien. Defendant counterclaimed, in general terms, for the loss of value, loss of fruit, and for overcharges.

The evidence shows that plaintiff was a "practical" grove caretaker. There is no evidence that he represented himself as being anything else. All that he is claimed by defendant to have promised was to give the Carter groves the "best of care," and that he would charge as low, or lower rates for labor, materials and other necessities as anyone in the vicinity. There was no testimony to support this allegation other than that of the defendant herself, who testified merely that plaintiff agreed to take good care of the grove and try to hold bills down.

There was evidence that fertilizer and insecticides were available at lower figures than was charged the Carters. But as to the fertilizer, the record is clear that without knowing exactly how it is compounded, fertilizer prices cannot be compared. The allegation in the counterclaim that defendant could purchase fertilizer direct from the factory was not proved. The court cannot agree with the master that there were overcharges for sulphur and other insecticides during the last three months of the contract, for the court finds no competent evidence to show such overcharges. Plaintiff charged during the last three months at the same rates

theretofore charged—and defendant. ordered materials after she had thoroughly inspected all prior accounts and with knowledge of the rates. The court agrees with the master that plaintiff did not unnecessarily cultivate the grove.

The essence of the counterclaim and the answer is defendant's allegation that Roberts promised he would treat the Carter grove as he did his own, which promise it is alleged he breached—as shown by the allegation that the Roberts grove was in better shape than the Carter grove. The first point would have been difficult to prove, but the latter point was susceptible of almost scientifically accurate proof, and the court believes that the absence of any effort to prove the difference between the two groves is significant.

The court agrees with the master that the plaintiff was not negligent in his care of defendant's grove, but does not concur with the master's findings that the growth of the trees in the Carter groves was below normal or that the trees were stunted. These facts, in the court's opinion, were not proved by any competent evidence whatever. The witnesses who testified that the grove was stunted based their opinions solely upon observation and only by comparison with other groves in the vicinity—yet they admitted they did not know the actual ages of the groves compared.

The contract between the parties was extremely vague, but is perhaps typical of the arrangements between grove owners and their caretakers. Nowhere has it been pointed out what the caretaker's compensation was to be, though it is safe to assume he was not donating his services. A reasonable profit or compensation is to be assumed, and this consideration might have resulted in a lengthy debate as to what is reasonable were it not for other considerations, to-wit—the court believes this is a typical case of an account stated, certainly up to September of 1953. Up to that time bills had been rendered regularly and either paid or held without complaint or objection. Under these circumstances neither law nor equity will permit the recipient to deny liability.

As to the bills rendered for September, October and November, 1953, after objection had been voiced, the defendant cannot object to the amount thereof because she then knew, in general, what plaintiff's charges were going to be—the accounts clearly show that the same schedule of charges was used thereafter. The master reported that excessive charges were made for certain materials during this later period. That is a mixed question of law and fact, and the court holds that there was no legal or equitable overcharge for the reason stated above. For all the court knows, the only

profit Roberts ever got was the spread between his cost of materials and what he charged. This may or may not have given him an exorbitant profit. We don't know. But even so, the question is moot because we have an acceptance of the charges both before and after the date objections were voiced by the defendant.

Final decree will be entered giving plaintiff a personal judgment against defendant for the amount of his unpaid accounts together with interest at 6% per annum from January 15, 1954 to date, and court costs in his behalf expended. The decree will deny defendant's counterclaim.

*Final decree:* This cause having come on to be heard on plaintiff's motion for taxing costs and for final decree in accordance with the written findings of the court dated June 20, 1955, and due and regular notice of hearing on said motion having been served on defendant's attorney, and the court having considered plaintiff's complaint, defendant's answer and counterclaim, the testimony, the special master's report, together with his findings and the findings of the court above recited, it is thereupon ordered, adjudged and decreed as follows—

1. That said findings of the court be, and the same hereby are approved and confirmed.

2. That the court costs are hereby taxed in the total sum of $679.70 and itemized as follows—

| | |
|---|---:|
| Frank E. Owens, filing fee | $ 12.50 |
| Pat Gordon, sheriff, service of summons | 8.00 |
| Willis V. McCall, sheriff, service of witness subpoena | 7.00 |
| Jeff Hill, witness fee, 2 days | 2.00 |
| Jeff Hill, mileage, 600 miles @ 5c per mile (2 trips Jacksonville to Tavares) | 30.00 |
| Jack Hooten, witness fee, 2 days | 4.00 |
| Jack Hooten, mileage, 80 miles @ 5c per mile (2 trips Minneola to Tavares) | 4.00 |
| J. D. Lindsey, witness fee, 2 days | 4.00 |
| J. D. Lindsey, mileage, 80 miles @ 5c per mile (2 trips Minneola to Tavares) | 4.00 |
| Joe Roberts, witness fee, 2 days | 4.00 |
| Joe Roberts, mileage, 40 miles @ 5c per mile (2 trips Astatula to Tavares) | 2.00 |
| Jack Rogers, witness fee, 2 days | 4.00 |
| Jack Rogers, mileage, 40 miles @ 5c per mile (2 trips Lisbon to Tavares) | 2.00 |
| James Jennings, witness fee, 1 day | 2.00 |
| James Jennings, mileage, 12 miles @ 5c per mile (Howey to Tavares) | .60 |
| Howard Thullberry, witness fee, 1 day | 2.00 |
| Howard Thullberry, mileage, 2 miles @ 5c per mile | .10 |

Alan Hamlin, court reporter ................................................ 183.50
Henry L. Pringle, special master (one-half master's
   fee as ordered by court) ............................................ 200.00

   Total paid by plaintiff ................................................$479.70
Henry L. Pringle, balance on master's fee on court
   order, still unpaid ......................................................$200.00

   Total costs ................................................................$679.70

3. That there is now due to the plaintiff, Arthur O. Roberts, formerly doing business as Roberts Grove Service, of and from the defendant, Mrs. Leonard Carter, Sr., also known as Rose T. Carter, the following amounts, to-wit—

Principal amount due and payable on account for work, labor and materials ........................................ $4,664.79
   Interest at 6% per annum from January 15, 1954   396.44
   Court costs ...................................................... 679.70

Total amount due plaintiff from defendant ............$5,740.93

4. That the defendant's counterclaim is disallowed and dismissed.

5. That the plaintiff, Arthur O. Roberts, do have and recover from the defendant, Mrs. Leonard Carter, Sr., also known as Rose T. Carter, the sum of $5,740.93, for which let execution issue as at law.

The court retains jurisdiction of the cause for the purpose of enforcing and effectuating the provisions of this decree and entering herein such other and further orders and decrees as may be required for that purpose.